Good morning, my name is Kenneth Flaxman for the Epelants. The University of Washington makes its email server available to faculty members for an internet mailing list known as the Faculty Issues and Concerns. And faculty members can discuss matters that relate to faculty matters. The State of Washington also has a statute that prohibits the use of state resources to support a political candidate or a public referendum or to use state resources for private benefit. That statute is enforced by one of the defendants in this case, the Executive Ethics Board. Plaintiffs contend that the Executive Ethics Board has used the state ethics law, has used policies and practices that it uses to enforce the state ethics law to chill First Amendment protected speech on the mailing list. The defendants view this case differently. They say this is about two professors who don't like what the Executive Ethics Board has done. That's an incorrect framing. This is about the First Amendment and their policies and practices. It's not about the individual cases that have now been resolved. They're no longer pending before the Ethics Board. There were two. So let me ask you a preliminary question that I'm also going to ask your friend. My understanding is at the time this case was filed, one of the cases against your client was pending one had been resolved. Is that factually correct? There are two clients. I'm sorry. Bad question. I'm talking about Professor Flaxman for this question. That's correct. And the second one was resolved in the course of proceeding with the Supreme Court. So the state indicates in their answering brief that they are not raising a younger issue with regard to your client. And maybe that's a younger waiver. But I'm going to bring that up with your client. My understanding of younger is. Your client, you mean Mr. Flaxman? It's Mr. Flaxman. So my understanding of younger is that if a case that implicates younger is pending when a case is filed, the case must be dismissed under younger even if it's resolved during the pendency. So with regard to Professor Flaxman, why isn't younger a problem unless the state has waived it? And maybe they have. But if the state hasn't waived it, why isn't younger a problem for Professor Flaxman? I think they waived it. I think there are lots of arguments that are centered in the brief about why younger never applied to this kind of proceeding. It wasn't a quasi-criminal proceeding before the Executive Ethics Board. It wasn't the kind of proceeding that is entitled to the Younger v. Harris bar. But I think in the latest submission, the Rule 28 submission, the state or the appellees agree that there is no reason not to decide the merits of Dr. Hagopian's claim. Well, I'm going to ask them that as well. So you take their filing, which says, let's dismiss the appeal at its moot and send it back in Professor Hagopian's case to let her file an amended complaint as a younger waiver. Yes. All right. Well, I'll ask them that. Please proceed with your argument. The reason why Your Honor should not follow that course is because the district judge, in the course of saying that she was not going to exercise jurisdiction, said that there's no First Amendment right in faculty email whatsoever. And she resolved that. She had the power to resolve that in the course of ruling on the 12b-1, but she resolved it in a very cursory fashion. And this court should reverse that, because that's a significant question that should not be resolved on the basis, as the district judge did, of her reading of state law. The district judge kind of wrapped this into a broader holding about ripeness and said, this case is not ripe. So why do you think it is? Well, the case is ripe because there's a chilling effect going on to the moderators of this mailing list who have to think about, will somebody make an anonymous complaint about this email if the executive ethics board thinks that somehow it solicits funds or somehow it supports a referendum? The district court seemed to think you hadn't sufficiently alleged the chilling effect. So how do you address that point? Well, the district court adopted or applied an incorrect definition of chilling effect. If the action will deter someone from speaking, then it has a chilling effect. If there's a possibility of a fine of $750 for forwarding an email to the mailing list, that's about a matter of public concern, especially to this community, but includes in the email that's being forwarded a reference to, if you want to support our cause, click here. So let me focus this question on Professor Flaxman. Tell me where in the extant complaint, and if you could refer to paragraph numbers, Professor, there's an allegation that Professor Flaxman's First Amendment rights have been chilled. Just give me a, tell me where in the complaint it says that. Because it's not that hard to allege, here are the policies. And because of the policies, my rights are chilled and I have not taken actions that I would have, but for the policies. So, but that's of course not the only way to allege your First Amendment rights have been chilled, but tell me where it says Professor Flaxman's First Amendment rights have been chilled. It doesn't say that. It says that the actions have chilled the exercise of First Amendment rights of the plaintiffs and of all the subscribers to the mailing list. Okay, so there, so it doesn't say that Professor Flaxman has foregone any action because of these policies. It says, no, it doesn't say that. All right, so the paragraph that you're citing to is which? Well, I think that's in the class action description, but why don't you tell me what paragraph number? The class, the rule in the Western District of Seattle is that if you are proposing a class action, you have to allege Rule 23 requirements. We didn't allege those requirements to allege chilling effect. We just allege those to comply with the rule. Throughout the complaint, like paragraph 47, this overbroad email search chills academic discussions. That's at page 23 of the record. Okay, but it doesn't say that Professor Flaxman's First Amendment rights have been or that he has acted or foregone action because of the policies anywhere, does it? Not directly. I mean, I guess the question this raises is, does it need to, right? Do you need to raise that? Our position is that it doesn't need to, and that if that pleading deficiency alleged or potential pleading deficiency had been identified by the defendants in their first motion to dismiss, we would have added it in the amended complaint that we filed to try to meet their conditions. So you are representing as an officer of the court that if we were to, for example, allow Professor Flaxman, and there are other, there are different issues with Professor Hagopian, but if we were to allow Professor Flaxman to amend the complaint as to his allegations, he would say that his First Amendment rights are chilled by these policies and actions and the potential fine, and he has either foregone actions or is taking different actions because of these policies and the possibility of going before an executive board, being sanctioned, et cetera. That's correct. He would tell you that he walks on eggshells in deciding whether to send something to the list or to approve something to the list. But in response to my question, you're representing that if we gave him the ability to amend, he would put in a new amended complaint those specific allegations as to him. Yes, Your Honor. Okay. Matthew, I saw in the reference in the recent EEOB decision that was submitted that Professor Hagopian may have retired, is that true? That's correct. So is she still subject to the policy? That's a question that the Executive Ethics Board thinks that it can go back five years for anything. Right. They thought she was subject. I mean, that was part of the finding. That was raised at her hearing, that she's no longer working. You can't reach her, but they decided, and I think that's consistent with Washington law, that she's still subject to the policy. But she's not anymore a moderator? She's still a moderator. So she's still a moderator. So she still moderates content? That's correct. And does she still have a university email address? Yes. So she can, if I have that right. But, so she could still send emails? That's correct. But she's emeritus now? That's correct. Let me get back to the First Amendment issue where we now have a district judge saying that there's no First Amendment right whatsoever in faculty email. The state law recognizes two very broad exceptions for disclosure as public records for email. There's an exemption for valuable formula. That's 4256-270 Section 1. And there's another exemption for preliminary drafts, notes, recommendations. There's no express grant of authority to the Executive Ethics Board to do this search of emails. And there's also no reason for them to search through emails other than if they're hunting for other potential violations of the law. Each of these three, of the three cases before the EEB, involved emails that were sent to the faculty issues and concerns mailing list. You would agree, wouldn't you, that in general when we analyze the actions of, for example, a state or other government entity that is subject to the First Amendment, we look at different factors and analyze a different test if they are acting in a proprietary capacity as opposed to a government capacity, yes? Yes. And here with regard to university emails, the government is acting in a proprietary capacity, is it not? To some extent, but cases that have confronted this issue and have confronted it in a lot more carefully considered manner than the district judge did here, have decided that there should be some kind of a balancing test, that there shouldn't be the right to rummage through faculty email just to see what's there. Can I ask, do you allege that the board took basically, I think it was three months or maybe longer worth of email without any limitations on the email pull, if you will? That's right. Okay, and no search terms or other things that were applied to it? Just freeze what's on the, give us a dump of what's there and we'll look at it. And did they read, do you allege that they reviewed all those emails or did they then apply some kind of filter to it before they did that? I have no idea what they did. When they gave us the emails in Professor Agopian's case, we looked at them and found that they were things in trash, things that were in spam. How many emails are we talking, like thousands? Five thousand, I think. Would your position, did the state in your view inform through policies that all emails sent on the state server are subject to search? No. So there was no notice of any kind? No, if there had been notice, perhaps somebody would have challenged it. But they just take, they adopted a rule which says that there's no privacy in email because it's easily reproducible. But now people know that's the rule. Well, if they read district court decisions, they know it's the rule. If they've come before the EEB, which went through their email, then they know it's the rule, but otherwise it's not published. That they will, if there's a complaint that doesn't require an examination of email, like in these cases where there's no dispute that the email was sent to the mailing list that by Dr. Agopian and Professor Flaxman, that it was sent there, they agreed it was sent there, they agreed this is a copy of it. Why does the EEB have to look through the email? Just in terms of your first amendment theory, which is really not before us because we're really dealing with the ripeness issue in the first instance, but do you have an issue with restrictions on faculty contributions to the listserv that are soliciting donations or are political in nature? I mean, do you object to all of that or do you acknowledge that some types of those restrictions are gonna be okay? If restrictions that comply with the statute where they're directly soliciting donations, which not where you have to click a box to pay for the donation, or where they're directly supporting a political candidate, don't get approved by the moderators. Yeah, because the way I understood your complaint was to be alleging that parts of this regime are overbroad. Not that it's completely invalid in every possible respect, but that parts of it are significantly overbroad. Do I have that? Is that fair? That's correct. It's a zero tolerance policy about anything that might result in a contribution to a charitable cause is a violation of state law. All right, so counsel, you've gone over your time, but we've taken up a lot of your time with questions, so we'll give you a couple of minutes for rebuttal. Thank you, your honor. Good morning, your honors, and may it please the court. I'm Assistant Attorney General Andrew Hughes for Appellants Bob Ferguson and Kate Reynolds with me at counsel table is my friend and colleague, Nathan Bays. So appellant's complaint was properly subject to dismissal on four bases. So counsel, I don't like to interrupt somebody right at the beginning, but I want to apologize, but I want to clarify two things, first of all. So is it correct that as to Professor Flaxman, this state is raising no younger issue? So the original complaint, we did raise a younger issue. I'm talking about now. Totally understand that. Since then, obviously facts on the ground have shifted. So the complaint was properly subject to dismissal under younger, but as we understand it, there is no ongoing proceeding with respect to Professor Flaxman. So I think the first, although the first bar, the first younger factor certainly applied to the complaint as filed to the operative complaint, facts on the ground have shifted. So I guess what we would say is it doesn't really make sense for your honors to rule on younger grounds when, as we now know, there is no ongoing. So that's good as to Professor Flaxman. And as to Professor Hagopian, I think one could reasonably take your most recent filing where you say you should dismiss the appeal as moot and give her a chance to amend as saying that the younger issue that you raised in your answering brief, you are no longer raising. Is that fair? So I would give roughly the same answer with respect to Professor Hagopian, which is to say currently there is no ongoing proceeding. Under Washington's Administrative Procedure Act, her recourse to challenge the finding is to file an action in state court, in Thurston County Superior Court, at which point there will be an ongoing action if she does what she needs to do. If, I'll note, she doesn't do that, she instead simply opts to challenge the EEB finding via an amended complaint in this lawsuit, then we have a different justiciability problem. Then we have a Rooker-Feldman problem. But you don't have a younger problem. Well, we would if she does what she needs to do and files and... But if she doesn't. If she doesn't, then I don't believe younger would apply to those circumstances. So as we sit here today, the state, based on the facts of which the state is aware, the state is not asking us to, under younger bar, either Professor Flaxman's or Professor Hagopian's action. I don't believe younger is the most sensible option. I think with respect to Professor Flaxman, we'd ask your honors to affirm based on constitutional rightness and or mootness. Well, I'm gonna take your answer as a yes to my question that you are not asking us to enforce a younger bar. Yeah, again, I think the amended complaint was appropriately subject to a younger bar, but as we know, facts on the ground have shifted, which is all the more reason, your honor, why we think their amended complaint, the operative complaint, was unripe. Because as we see, facts on the ground have totally shifted. All right, so I interrupted your argument. Please go ahead. No, you got me right where I wanted to go next, which is because facts on the ground have shifted since the initial complaint. We do think it makes sense to treat these two claims separately. And as I said, for Professor Flaxman, we are asking that you affirm the district court's conclusion on ripeness and or mootness grounds, particularly now that he is not under any sort of investigation. And I wanna talk about that in a little more detail later on. For Professor Hagopian, as we said in our 28J letter, to which your honor adverted, given the fundamental shift in the posture, we do think remand makes sense. And I wanna explain just a little bit more about why that is. So as your honors know, one of the core premises of the district court's dismissal order is that neither Hagopian nor Flaxman had been sanctioned. So for example, on prudential ripeness, district court noted correctly that, quote, in the absence of a final action against them, plaintiff's claims are not fit for judicial resolution. That's at ER 10. Now, of course, Professor Hagopian has been sanctioned, primarily, I'll note, not because of any email she sent on this listserv, but because of her pervasive use of her state-issued email address for personal business like shopping, Netflix account, and political engagement. So although, as I indicated earlier, the district court's ruling was entirely correct at the time it was made, based on the facts alleged in Hagopian's complaint, it no longer fits the facts on the ground. Now, having said that, we do still believe that there are real Article III barriers to Hagopian bringing an amended claim here, particularly because the EEOB's findings, as I said, are based primarily on conduct that has nothing to do with the list of the dismissal  But I mean, there seems to be some confusion in the district court in some of the briefing on the relevance of the EEOB proceedings, because their claims do not necessarily depend on those. Their allegation is that they're subject to a speech-restricting regime that they're having to live under. As it turns out, they've also been investigated and had that regime enforced against them, which is significant when it comes to ripeness, but their claims don't depend on that. So that may raise questions of abstention, but it doesn't, to me, raise much else beyond that. I would say sort of, Your Honor. There has been a real attempt to muddy the waters in that respect, but they say in their amended complaint, they say in their pleadings below, and they say in their opening brief, that they're not challenging the Ethics in Public Service Act. All they're challenging is the way that it has been applied to them. But that's nothing more than a challenge to the investigations that they're undergoing right now. It's like saying — But they said something like, we're not asking you to invalidate any of the administrative proceedings. Right. But that simply doesn't make sense, Your Honor, because if you're saying the way you're applying it to us is — it violates our First Amendment right. That's nothing more than saying we shouldn't be under investigation for the conduct of — Right. And I think that when you have parallel proceedings, that raises questions about, you know, which proceedings should move forward and which should be held for the other. But when it comes to whether the claim is ripe, what we're concerned about is that the dispute should not be premature. It shouldn't be abstract. It needs to be concrete. I'm having trouble seeing why this isn't a pretty concrete dispute at this point, given that you have two professors who are subject to a regime that they claim is speech-restricting, and when on top of that, they've already been investigated and even had this regime enforced against them. So how is that not ripe? So let's talk about Twitter then, Your Honor. Let's talk about constitutional ripeness. So in Twitter, this Court was absolutely clear that to plead a constitutionally-ripe First Amendment claim, a party under investigation must allege, with facts, an actual injury that they're suffering on account of an investigation. Right. But, I mean, don't you think Twitter is kind of a different case? That's not... They were receiving a CID, right, a request for documents. Yes. Here, that's a step removed. You know, the allegation was that the receipt of documents would, in turn, chill the speech. There's an attenuation issue there. Here, there's a regime that prevents you from speaking subject to penalty. So don't you think that's a little different? So, no, Your Honor, for a couple of reasons. The first is that, as Twitter makes clear, I think, these sorts of claims that challenge an investigation, which is really what's going on here, a plaintiff must show, must allege more than a naked assertion of chill. And that's, as I heard Mr. Flaxman, I believe, say, that Professor Flaxman's speech wasn't chilled. There's no allegation that his speech was actually chilled. So, counsel, it's possible that Judge Bress and I may have a different view of ripeness. But when I asked your friend what he would allege, if given the opportunity to amend, if this complaint alleged for Professor Flaxman, here are these policies, here is the possibility of investigation from these policies, and as, and I believe these policies violate the First Amendment, investigating me violates, or an investigation violates the First Amendment, and because of these policies and the possibility of investigation, my actions have personally been chilled. I have foregone sending emails. I have foregone sending other things. Wouldn't that, hypothetically, I mean, depending on the details, solve the ripeness problem, if that were the allegation? No, I don't believe so. Tell me why, why if Professor Flaxman were to allege, here are all these policies, here are the searches, here are the things that I've been subject to, I have a First Amendment right to do a variety of things here, and I have foregone doing them because of fear and chilling. Why wouldn't that be ripe, if that were the allegation? Right. Which I don't think it is in this complaint, but if it were, why wouldn't that be ripe? So, as you said, that's not the allegation in this complaint. So that would not be ripe or would not be, let me step back a little bit. That would not raise an Article III case of controversy because Professor Flaxman is not under any sort of investigation. He was under investigation. He prevailed in those investigations. He doesn't have to be under investigation to bring a claim challenging a regime that restricts his speech. The fact that he is demonstrates the acuteness of the problem by his rights, but he doesn't, there's no requirement for somebody to bring a First Amendment claim that they're being actively prosecuted by the state. So that's exactly what's going next, Your Honor. Thank you. So, appellants do try to save their complaint in their reply brief, really, by raising pre-enforcement standing and saying, oh, what we're really doing is challenging this sort of restrictive regime. But the problem is, aside from the fact that they didn't raise this until their reply, they never raised it below, is that they don't allege any intent to engage in future conduct that is prohibited by the Ethics in Public Service Act. They likewise don't allege that the Ethics in Public Service Act itself is unconstitutional, as they repeatedly say. I have trouble with this. I mean, don't they allege they're going to continue to be moderators? I mean, what more do you want them to say? They're subject to the regime. Right. But the Ethics in Public Service Act doesn't, the fact that they're moderators, doesn't mean that they're necessarily going to violate, or even that they're likely going to violate the Ethics in Public Service Act. But counsel, I agree with you that, in my view, they haven't alleged that. But it sounds to me like they are, at least in Professor Flaxman's case, because he still is employed, right? As far as I know, yeah. That he is willing to allege on remand that he wants to take these actions, but is chilled from doing so. So putting aside it's late in the day, and it is late in the day, but we know Professor Hagopian's claims are going to live on, based on what the state has told us, in some form or another. I still have trouble seeing that if the allegations in this hypothetical new amended complaint, whereas your friend says they're going to be, why doesn't that, I still don't understand why that doesn't solve the ripeness problem. It may not solve any kind of merits problem, but I don't understand why it wouldn't solve the ripeness problem. If plaintiffs, or if appellants want to raise an entirely new claim that the Ethics in Public Service Act chills their speech, that it violates their First Amendment rights, they're free to do so. And in fact, I'll note that that is a different case. They're welcome to do that. But why isn't that this case? Because they repeatedly say they're not challenging the Ethics in Public Service Act. It's sort of like saying, Your Honor. I think what he, I understood that. To me, we're not challenging it as in, we think it should be completely out the window, but we do think there's parts of it that are overbroad. So again, they can allege that. They don't allege it here. It's sort of like saying, Your Honor, we're not challenging a prohibition against jaywalking. We're only challenging a prohibition against jaywalking when it's applied to us. How else should we understand the complaint, right? Which goes through certain aspects of the policy, like the email search feature, like the argument that, you know, even any kind of incidental request for a donation or any incidental political feature to the email results in it being improper. I mean, they have alleged parts of this policy that they believe extend beyond what the First Amendment allows. We don't know what the answer to that is, but that's the allegation. But I would say those aren't matters of policy, Your Honor. Those are matters of the statute. The statute itself says that sending an email using state resources for the purpose of the financial gain of others is against the law. It violates the Ethics in Public Service Act. Counsel, excuse me. Sorry, excuse my voice. I guess to pick up on where Judge Bress is going with this, it seems like it would be perfectly reasonable for them to not be challenging the statute because as I read the complaint, what they're saying is that the agency is being too strict in its application of the statute. Not that the statute and the provision that you're just talking about about use of email is in and of itself wrong, but that how it's being applied and how strictly in their argument it's being applied is the problem. So if that's the case, and I guess I need you to accept for purposes of my question that premise, then does your argument work? Well, again, Your Honor, I would say that's the same as the argument that the prohibition against jaywalking is fine, but the way it's applied to me is somehow unfair. It's the Ethics in Public Service Act, which they contend they're not challenging, which, again, they could file an entirely new complaint. But isn't there a world in which that's true, that they're not challenging the act on its face? They're challenging how it's — how the agency is interpreting it and the procedures or regulations or whatever that it has put in place to enforce that act. Yes, I would say that's this case. They're saying that the way it's being applied to us in these investigations is unconstitutional. And for all the reasons we've said, there's rightness problems there, there's merits problem there, there was a younger problem there at the time there was an ongoing investigation. But there's simply no daylight between the position of the way it's being enforced against me is unconstitutional and the statute and, you know, the policies, the way that it's enforced generally is unconstitutional. They don't allege any sort of tertium quid, any sort of hypothetical investigation of someone else or future investigation of themselves that is problematic. And I guess the analogy I would give is, you know, they touched a hot stove and Professor Flaxman almost got burned but didn't. Professor Hagopian did get burned. But the fact that the stove is still on doesn't mean they have any expectation of any sort of future injury. Yeah, but the problem with this is that when people are subject to speech-restricting regimes, we allow them to bring that claim on the basic understanding that the nature of that regime is going to chill what they do. That's just the necessary implication of a regime that restricts speech. I don't think we've ever required somebody who wants to, you know, publish a movie in the face of a censorship regime or anything else to do anything remotely akin to what you're suggesting Professor Flaxman need to do here. Well, I don't know that we actually have any sort of disagreement here because, as I've said, if they want to bring a new complaint that challenges the Ethics in Public Service Act, the prohibition against the use of state emails to solicit funds for striking workers or for anyone else, they are more than welcome to do so. We have real concerns about the merits of such a claim, about just disability issues that we will raise if and when they do bring that complaint. That's just not this case. I see them over time.  We're taking up a lot of your time with questions as well. Oh, it's a pleasure. Is the state's position that it has an unfettered right to search emails that use the state system like this? More or less, Your Honor. What I'll say about that is these emails are subject to the Public Records Act, and every state employee knows their emails are subject to the Public Records Act. So claiming some sort of protected privacy interest in emails that everybody knows, I'm a state employee, everybody knows are subject to the Public Records Act, is sort of like a prison inmate. I'm sure the Public Records Act has exceptions. Oh, it certainly does. So, but is the state's position that the state, cross-state, has the right for any reason to search every email? Well, I don't know that that's an issue that's really raised by this case, Your Honor, because appellants in this case don't allege that there are any emails that are actually covered by the Public Records Act, by any exception to the Public Records Act. They don't allege, for example, that there were any, you know, formula in their emails, you know, secret formula in their emails that were revealed to the EEB. Were they to allege something like that, they might come close to this. Right, but the allegation is that based on forwarding of a union-type email to a listserv, the state then searched months' worth of email? Absolutely, and Your Honor is welcome to conduct that very same email search. You just send a public records request to the University of Washington asking for each and every one email sent to or from Professor Amy Hagopian during a three-month period, and you will get those emails subject only to limited narrow PRA exemptions. And the fact that you have the right to search those emails means that surely there's no First Amendment-protected privacy interest in those emails. Okay, so counsel, again, we've taken up a lot of your time. Do you have any closing statement you'd like to make? I was just going to say that we'd ask Your Honors, for all the reasons outlined here in our briefing, we'd ask this Court to affirm dismissal as to Professor Flaxman and to remand as to Professor Hagopian to give her an opportunity to amend her complaint. Thank you. Counsel, we'll give you three minutes for rebuttal. I'd like to make two points. I think if we look at the Washington statute about public records, we'll see that you can't make a request for all emails sent by Professor Hagopian from time one to time two. You have to ask for subject matter. You have to ask for relating to something. You can't just say, I want all of her emails for March of 2022. I think the statute explicitly prohibits that kind of a request. The other thing that I was about to get when I ran out of time is that the district judge's decision that there's no First Amendment right whatsoever in faculty email, even though it came on a 12B1 motion, is probably entitled to . . . is probably viewed as a judgment on the merits and should be . . . it's a Brownback v. King, 592 U.S. 209 at 218, the way I read it. Maybe I'm reading it incorrectly, but I think it's important that this Court not let that judgment on the merits, if it is a judgment on merits, stand and let the Court say that there should be more careful consideration of First Amendment issues about faculty email. Are there further questions? No. Thank you very much. All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we will move to . . .
judges: BENNETT, BRESS, FORREST